UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jennifer A. D., | Case No. 23-CV-0768 (JRT/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin J. O'Malley, Commissioner of the Social Security Administration, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer A. D. seeks judicial review of a final decision by the Commissioner of the Social Security Administration, which denied the Plaintiff's application for supplemental security income. The case is before the Court on the parties' briefing (Dkt. Nos. 17 and 19). Plaintiff raises three issues for judicial review: (1) whether the ALJ erred in assessing Plaintiff's mental residual functional capacity, (2) whether the ALJ erred in assessing Plaintiff's physical residual functional capacity, and (3) whether the ALJ properly considered whether an assistive device was medically necessary. Plaintiff seeks a reversal of the Commissioner's decision and a remand to the Social Security Administration. Defendant asks the Court to affirm the final decision. As set forth below, the Court concludes that the ALJ erred in assessing Plaintiff's mental and physical residual functional capacities, but not in considering whether Plaintiff's use of an assistive device was medically necessary. The Court therefore

recommends reversing the Commissioner's final decision and remanding the matter for further proceedings.

**I.      Background**

Plaintiff applied for supplemental security income ("SSI") on November 11, 2019, alleging she has been disabled since November 8, 2018, due to degenerative disc disease, radiating pain in the bilateral shoulders and legs, migraines with light sensitivity, bipolar disorder, split personality, anxiety, manic depression, attention-deficit/hyperactivity disorder ("ADHD"), diabetes type II, neuropathy bilaterally in her hands and feet, and chronic obstructive pulmonary disease. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 206, 235.)[1] Plaintiff had applied for SSI three times before: in 2008, 2011, and 2018. This is relevant because consultative examinations and other evidence related to those applications were considered by the ALJ in this case and are cited by the parties in their memoranda.

"SSI benefits are not payable for a period prior to the application." *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989). Therefore, the relevant period of time is from November 11, 2019 (the date of the application), through April 5, 2022 (the date of the ALJ's decision). *See id.*; *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision on the SSI claim to mark the end of the relevant time period).

---

[1] The administrative record is filed at Dkt. No. 12. The record is consecutively paginated, and the Court cites to that pagination rather than ECF number and page.

A.     **Summary of Relevant Evidence**

1.     **Consultative Examinations**

Plaintiff attended a consultative examination with Julie Hoyt, EDD, LP, on September 16, 2008, in connection with Plaintiff's first SSI application. (R. 327.) Plaintiff's medical history included migraines, fibromyalgia, hypertension, chronic obstructive pulmonary disease ("COPD"), asthma, allergies, osteoporosis, and a gastric ulcer. (R. 328.) Plaintiff said she also had depression, anxiety, panic attacks, and shortness of breath. (R. 328.) Ms. Hoyt described the following findings from a mental status examination: slow gait, pleasant and cooperative, good eye contact, good ability to communicate, coherent but vague stream of consciousness, restricted affect, and orientation to person and time. (R. 330–31.) Ms. Hoyt's diagnostic impressions were major depressive disorder, attention deficit disorder, and obsessive-compulsive disorder with mixed anxiety disorder features. (R. 332.) In the "mental source statement" section of the form, Ms. Hoyt opined that Plaintiff could understand and follow instructions; would be limited in sustaining attention and concentration and in carrying out tasks with persistence and pace, both of which would be "poor if she was confronted by her supervisor or authority figure"; could respond appropriately for "brief superficial contact with coworkers"; and would have low tolerance for stress and pressure in the workplace. (R. 332.)

Plaintiff returned to Ms. Hoyt on August 16, 2011, for a consultative examination in connection with her second SSI application. (R. 335.) Ms. Hoyt's clinical observations included appropriate dress and grooming, cooperative, "somewhat slow" psychomotor

activity, fleeting eye contact, unimpaired communication, and orientation to person and time. (R. 337–38.) Based on testing results, Ms. Hoyt estimated that Plaintiff fell in the "low average range of intellectual functioning." (R. 339.) Ms. Hoyt's diagnostic impressions included mood disorder, obsessive compulsive disorder, and attention deficit disorder. (R. 339.) Ms. Hoyt concluded that Plaintiff could understand and follow instructions, but had limited capacity to sustain attention and concentration, limited ability to carry out work tasks with reasonable persistence and pace, and probably "limited tolerance to respond appropriately to brief and superficial contact with coworkers or supervisors and to handle the stress or pressure typically found in a workplace." (R. 339.)

On June 27, 2018, Plaintiff presented to Mark Lysne, Ph.D., for a consultative examination in connection with her third SSI application. (R. 341.) Dr. Lysne found Plaintiff's concentration and verbal reasoning below average, which would inhibit her ability to understand and follow through with complex instructions consistently, but also Plaintiff had the necessary verbal and memory abilities to understand simple instructions. (R. 346.). In addition, Plaintiff's fatigue and low energy could lead to occasional difficulty with completing demanding activities with adequate persistence and pace. (R. 347.) Further, the doctor found, due to Plaintiff's basic social skills, she would not have consistent difficulty interacting with others superficially, but she could have occasional difficulty with authority figures. (R. 347.) Also, she likely could not tolerate stress in entry-level work consistently. (R. 347.) Overall, Plaintiff's symptoms affected her functioning to a moderate degree. (R. 346.) Dr. Lysne's diagnostic impressions were post-traumatic stress disorder, major depressive disorder, and personality disorder. (R. 346.)

**2.     Progress Notes and Imaging Results from Providers**

Plaintiff saw Jessica Kleindl, APRN, CNP, primarily for neck and back pain. At an appointment on July 10, 2019, Plaintiff appeared to be in mild to moderate pain. (R 378.) Ms. Kleindl's assessments included chronic bilateral low back pain with bilateral sciatica, chronic neck pain, and chronic pain syndrome. (R. 378.) Ms. Kleindl also noted no significant anxiety, depression, or panic in the "Review of Systems" summary. (R. 377.)

Plaintiff experienced elbow and shoulder pain in August 2020. (R. 676.) An x-ray revealed minimal acromioclavicular degenerative arthritis, minimal glenohumeral degenerative changes, mild degenerative changes in the partially visualized spine, and mild bone demineralization. (R. 676.)

Plaintiff returned to Ms. Kleindl in April 2021 for treatment of worsening joint pain overall and significant pain in the left hip and back. (R. 1101.) Plaintiff's finger and knee joints were moderately swollen, and her hips were tender to palpation. (R. 1104.) Ms. Kleindl ordered imaging of the hip and spine. (R. 1106.) Ms. Kleindl's review of all symptoms noted no significant anxiety, depression, or panic. (R. 1104.) Subsequent imaging showed minor osteoarthritis of the left hip (R. 789) and mildly progressive mild-to-moderate degenerative disc disease and facet arthropathy of the lumbar spine (R. 791).

Also in April 2021, the clinic where Ms. Kleindl worked faxed a prescription for a walker for Plaintiff. (R. 1113.) A treatment note from Ms. Kleindl dated a few days earlier does not mention the walker or otherwise indicate why one was prescribed. (*See* R. 1097–1110.) On the section of the prescription form for authorizing reimbursement for the

walker, the box "Patient has mobility limitations which impairs (sic) ability to perform ADLs [activities of daily living]" is not checked. (R. 1113.)[2]

In July 2021, Plaintiff fell backwards while climbing on a chair, landing on a metal ridge on a camper door. (R. 1037.) She sought treatment for back pain four days later, and Ms. Kleindl's progress note documented mild to moderate pain, antalgic gait, tenderness to palpation in the thoracic spine, and normal motor strength and sensation. (R. 1039.) A shoulder x-ray in September 2021 was normal except for a finding of minor arthrosis in the acromioclavicular joint. (R. 714.)

### 3.   Medical Findings of State Agency Consultants

On September 15, 2020, state agency medical consultant Stacy Holberg, D.O., reviewed Plaintiff's medical records for the initial determination of Plaintiff's SSI application. Dr. Holberg said there was insufficient evidence of Plaintiff's functioning and that psychiatric, orthopedic, and pulmonary-function consultative examinations were required. (R. 101.) Dr. Holberg noted that an orthopedic consultative examination had been scheduled in April 2020 and a psychiatric consultative examination had been scheduled in May 2020, but both were canceled due to Covid, and Plaintiff had not responded to attempts to reschedule. (R. 102.) State agency medical consultant Russell J. Ludeke, Ph.D., L.P., also reviewed the records at the initial determination stage and determined that Plaintiff had severe impairments of major joint dysfunction and COPD. (R. 103.) He agreed

---

[2] There are three versions of the form in the record (R. 1111–13), only one of which is signed by a provider (R. 1113). The signature is illegible, and the heading for the "user"— which appears on the other two versions as Ms. Kleindl—does not appear on the signed form. (*Compare* R. 1113 *with* R. 1111–12.) This is likely meaningless, but it is curious.

that consultative examinations were needed but that Plaintiff had "failed to cooperate." (R. 103.)

On December 3, 2020, state agency medical consultant Jonathan Katz, M.D., reviewed Plaintiff's records at the reconsideration stage of review. Dr. Katz indicated that psychiatric, orthopedic, and pulmonary-function consultative examinations were required because there was not sufficient evidence to make a decision on the claim. (R. 114.) On the Medical Evaluation portion of the form, Dr. Katz determined that Plaintiff's COPD was non-severe and that there was insufficient evidence to fully assess Plaintiff's pain. (R. 116.) Findings of a fourth state agency medical consultant, Mera Kachgal, Ph.D., L.P., were consistent with the other consultants' findings. (R. 116–17.)

B.  **Procedural History**

Plaintiff's SSI application was denied at both the initial review and reconsideration stages. She requested an administrative hearing before an ALJ, and the hearing took place on February 15, 2022. (R. 30.) Plaintiff and vocational expert Douglas Prutting testified at the hearing.

Relevant to the issues presented for judicial review, Plaintiff testified that she could not work because of a bad back and hip, rheumatoid arthritis, a heart condition, bipolar disorder, a personality disorder, and agoraphobia. (R. 40–41.) Back and hip pain were the most limiting because of severe, constant pain and trouble walking. (R. 41.) She testified that she could sit comfortably for no more than 30 minutes at a time, and would then need to walk around for five to ten minutes. (R. 41–42.) She could stand comfortably for no more than 30 to 45 minutes. (R. 42.) Plaintiff used a cane and a walker on a daily basis. (R.

7

42.) She could lift 10 to 15 pounds without difficulty. (R. 48.) Her daughter helped her get out of bed, get dressed, go to the toilet, and bathe. (R. 44.) Her daughter also prepared all of her meals, washed her clothes, and cleaned the house. (R. 44.) Plaintiff could not shop for groceries because of an aversion to large crowds. (R. 47.) Plaintiff also testified that her mood was happy and she was a very happy person. (R. 50.) She has no trouble accepting instructions from people. (R. 51.)

After Plaintiff testified, the ALJ posed several hypothetical questions to vocational expert Doug Prutting. Relevant here, Mr. Prutting testified that a hypothetical individual with Plaintiff's characteristics[3] could work as a mail clerk, electronics worker, or bench assembler.

On April 5, 2022, the ALJ issued a written decision finding Plaintiff not disabled. (R. 9–25.) The ALJ followed the familiar five-step sequential analysis outlined in 20 C.F.R. § 416.920. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 416.920(a)(4).

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 14.) At the second step of the sequential analysis, the ALJ found that Plaintiff had the following severe impairments: diabetes, neuropathy,

---

[3] Plaintiff's characteristics included no past relevant work; limited education; able to perform a range of light work; able to lift and carry 20 pounds occasionally and 10 frequently; able to stand and walk about 6 hours in an 8-hour day; able to sit about 6 hours in an 8-hour day; able to occasionally climb, balance, stoop, kneel, crouch, crawl, and reach; limited to simple, routine, and repetitive tasks; and limited to occasional interaction with co-workers and the general public. (R. 51–52.)

8

obesity, osteoarthritis, degenerative disc disease of the cervical spine, fibromyalgia, bronchitis, migraines, bipolar disorder, attention deficit hyperactivity disorder, and personality disorder (R. 14.) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 14.) With particular respect to Listings 1.15 (disorders of the skeletal spine) 1.16 (lumbar spinal stenosis), and 1.18 (abnormality of a major joint), the ALJ considered whether there was a medical need for the walker and concluded there was not: "The record also did not provide prescriptions for assistive devices or objective evidence supporting the[] need for assistive devices." (R. 15.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ again considered Plaintiff's use of an assistive device. The ALJ acknowledged Plaintiff's testimony that she used an assistive device to walk, but he contrasted this testimony with physical examination findings that "showed normal range of motion, no edema or deformity, normal sensation, intact cranial nerves, normal muscle tone, and intact deep tendon reflexes." (R. 21.) In addition, the ALJ remarked, Plaintiff had received generally conservative treatment, and she also testified that she could walk without an assistive device. (R. 21.)

The ALJ also considered the persuasiveness of medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 416.920c. He deemed the state agency consultants' medical findings not persuasive because he thought that imaging and examination findings should have provided sufficient evidence to assess Plaintiff's

9

physical functional capacity. (R. 21.) As for Plaintiff's mental functional capacity, the ALJ found that the state agency consultants' medical findings were not persuasive because they did not cite to objective evidence establishing that Plaintiff had not cooperated with attempts to reschedule consultative examinations and because their findings were inconsistent with evidence of severe mental impairments and limitations. (R. 22.)

With respect to Dr. Lysne's opinion, the ALJ found persuasive his finding that Plaintiff could do "simple tasks with additional interaction limitations." (R.22.) The ALJ found not persuasive, however, Dr. Lysne's findings that Plaintiff "could understand simple instructions but would have occasional difficulties completing demanding activities with adequate persistence and pace, interacting with others, dealing with authority figures, and tolerate stress consistently." (R. 22.) The ALJ explained that these latter findings were inconsistent with other evidence. (R. 22.)

Regarding Dr. Hoyt's opinions, the ALJ found persuasive her finding that Plaintiff could do "simple tasks with additional interaction limitations." (R. 23.) But the ALJ found not persuasive her findings that Plaintiff "would have limited capacity to sustain attention and concentration, carryout work like tasks with reasonable persistence and pace, handle stress and pressure, and limited tolerance to respond appropriately to brief and superficial contact with coworkers or supervisors." (R. 22.)

Based on the ALJ's consideration of all the evidence, the ALJ assessed Plaintiff's RFC as follows.

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an

10

eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally reach overhead with the bilateral upper extremities. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She must avoid all exposure to hazards and cannot perform commercial driving. She can perform simple, routine, repetitive tasks and tolerate occasional interaction with co-workers and the general public.

(R. 18.) In arriving at the exertional, postural, and environmental limitations, the ALJ relied on examination findings, diagnostic imaging, and treatment history. (R. 23.) With the above RFC, the ALJ concluded, Plaintiff could work as a mail clerk, electronics worker, or bench assembler. (R. 24.) Consequently, Plaintiff was not disabled. (R. 24.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for SSI, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

#### A. The ALJ's Mental RFC Determination

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence. She first contends that the ALJ failed to develop the record and obtain a medical opinion about her mental functioning during the relevant time period.

Both of the state agency mental medical consultants stated that a mental consultative examination should be ordered and they declined to assess Plaintiff's mental functioning without one. The ALJ did not acknowledge the consultants' statements, nor did he explain

why he did not order a consultative examination for the relevant time period. In addition, Dr. Lysne's consultative examination predated the time period under review by more than 16 months, but the ALJ neither acknowledged that nor explained why Dr. Lysne's findings were still germane.

Defendant argues generally that an ALJ may reach a decision without obtaining additional evidence when the existing record is sufficient. (Def.'s Br. at 4.) That is generally true, but Defendant does not even acknowledge, much less respond to, the state agency consultants' statements that the record was lacking.

Defendant also argues that Plaintiff has not shown that additional records existed but were not obtained by the ALJ (*id.*), but that is precisely the point. There is not a consultative examination or medical opinion that assesses Plaintiff's mental functioning for the time period beginning on November 11, 2019, and Plaintiff argues the ALJ should have obtained one.

Although there is evidence of mental impairments from November 11, 2019 onward, it is not clear *how* the impairments affected Plaintiff's ability to function during the relevant time period. RFC is a medical question, and there must be medical evidence in the record about how a claimant's mental impairments affected her functionality. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (quoting *Ford v. Sec'y of Health & Human Servs.*, 662 F. Supp. 954, 955 (W.D. Ark. 1987)). The state agency consultants said as much in their review of Plaintiff's records and declined to assess her functionality precisely for that reason.

The ALJ said he arrived at the exertional, postural, and environmental limitations by drawing from examination findings, imaging results, and treatment history. An ALJ may not draw his own inferences from medical records, however. *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975), *quoted in Nevland*, 204 F.3d at 858. When the record lacks medical evidence of functionality, the ALJ should seek an opinion from the claimant's treating physician or order a consultive examination that assesses the claimant's RFC. *Nevland*, 204 F.3d at 858. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

The Court acknowledges that medical records predating an SSI application date can nonetheless be relevant to a claim of disability. It is significant, however, that none of the state agency consultants believed Dr. Lysne's or Dr. Hoyt's reports to be relevant, stating instead that a new consultative examination should be ordered. The ALJ did not acknowledge these statements, explain why he did not order a new consultative examination, or explain why Dr. Lysne's and Dr. Hoyt's findings were still valid.

Even if the ALJ had done so, however, the only limitation the ALJ found persuasive from Dr. Lysne's and Dr. Hoyt's opinions was a purported finding that Plaintiff could do "simple tasks with additional interaction limitations." The phrase "additional interaction limitations" was coined by the ALJ, however. Neither Dr. Lysne nor Dr. Hoyt used it in their reports. Furthermore, the phrase is vague, and the ALJ did not explain what he meant by it. Significantly, the ALJ had found all of the other limitations opined by Dr. Lysne and

14

Dr. Hoyt to be not persuasive, so there was no evidence left to define what "additional interaction limitations" could mean.

There is one last issue to address before the Court states its conclusion. After the ALJ found essentially all of Dr. Lysne's and Dr. Hoyt's findings unpersuasive, the ALJ said, "to the extent these limitations were over-restrictive, this opinion is not persuasive." But the ALJ never described the extent to which any particular limitation was over-restrictive, and the Court can only guess what that equivocal phrase was meant to accomplish.

The Court concludes that the ALJ erred by not developing the record and obtaining medical evidence of Plaintiff's mental functioning during the relevant time period. Consequently, the Court recommends that the Commissioner's decision be reversed and the case remanded to the SSA with instructions for the ALJ to obtain medical evidence about how Plaintiff's mental impairments affected her functioning from November 11, 2019 to April 5, 2022.

Plaintiff offers a second reason why the ALJ's mental RFC determination was erroneous: because the RFC did not adequately account for the mild limitation in adapting and managing oneself that the ALJ found at step three. The RFC limited Plaintiff to "simple, routine, repetitive tasks" and "occasional interaction with co-workers and the general public."

The "adapt or manage" criterion refers to a claimant's ability to regulate emotions, control behavior, and maintain wellbeing at work. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(4). "Examples include: responding to demands; adapting to changes; managing

15

your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.* A "mild" limitation in this area means that the claimant's functioning is slightly limited. *Id.* § 12.00F(2)(b).

The Court finds that the RFC adequately accounted for a mild limitation in adapting and managing oneself at work. For example, the RFC limitation to simple, routine, and repetitive tasks reflects a slightly limited ability to adapt to changes, and the RFC limitation to occasional interaction with co-workers and the general public corresponds with a slightly limited ability to respond to demands. To the extent that Plaintiff relies on findings from Dr. Lysne and Dr. Hoyt that she would be more limited in tolerating stress than the RFC accounts for, the ALJ will have an opportunity on remand to consider the findings of a new medical source. Thus, if there was an error in that regard, it will be moot.

### B.     The ALJ's Physical RFC Determination

Plaintiff argues that the ALJ's physical RFC determination is not supported by substantial evidence, again arguing that the ALJ failed to develop the record by not obtaining medical evidence about her functioning—this time, physical—during the relevant time period.

The state agency consultants stated at both the initial and the reconsideration levels of review that a consultative physical examination was needed because the evidence of record was insufficient to support a decision on the claim. Because of the lack of that

16

evidence, the consultants did not assess Plaintiff's physical functionality. The ALJ neither acknowledged the consultants' statements nor explained why he did not order a consultative examination to assess Plaintiff's physical functioning.

The Court reaches the same conclusion it did for Plaintiff's mental functioning. Although there is evidence of physical impairments, there is no medical evidence establishing how Plaintiff's physical impairments affected her functionality during the relevant time period. *See Nevland*, 204 F.3d at 858. The state agency consultants noted that lack, then said precisely that they declined to assess her physical functionality because of that lack of evidence.

An ALJ may not draw his own inferences about a claimant's functional abilities from medical records. *Lund*, 520 F.2d at 785; *Nevland*, 204 F.3d at 858. When the record lacks medical evidence of functionality, the ALJ should seek an opinion from the claimant's treating physician or order a consultive examination that assesses the claimant's RFC. *Nevland*, 204 F.3d at 858. There is no medical evidence that Plaintiff could, for example, lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8-hour workday; or sit for 6 hours in an 8-hour workday. The ALJ simply inferred these functional restrictions from treatment records and imaging reports. The ALJ erred in doing so.

### C. The ALJ's Consideration of Plaintiff's Use of an Assistive Device

Plaintiff argues that the ALJ erred in his consideration of whether the walker she used was medically required. "An ALJ must consider limitations resulting from a claimant's use of a cane" or other assistive device only if the device "is 'medically

17

necessary' or 'medically required.'" *Mya Y. v. Saul*, No. 20-cv-1296 (JRT/LIB), 2021 WL 3023691, at *4 (D. Minn. June 28, 2021) (citing SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996); *Richmond v. Berryhill*, 16-cv-140 (LRR), 2017 WL 4074633, at * 3 (N.D. Iowa Sept. 14, 2017)), *R. & R. adopted*, 2021 WL 3022723 (D. Minn. July 16, 2021). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a . . . device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996).

At step three of the sequential evaluation, the ALJ considered whether there was a medical need for an assistive device and concluded there was not: "The record also did not provide prescriptions for assistive devices or objective evidence supporting the[] need for assistive devices."[4] (R. 15.) In assessing Plaintiff's RFC between steps three and four, the ALJ again considered Plaintiff's testimony that she used an assistive device. The ALJ contrasted her testimony with objective findings showing a normal range of motion, no edema or deformity, normal sensation, intact cranial nerves, normal muscle tone, and intact deep tendon reflexes. The ALJ also noted Plaintiff's conservative course of treatment and testimony that she could sometimes walk without assistive devices.

---

[4] The ALJ's statement is mostly true. There was not a prescription *per se*, though orders for a walker were faxed from the clinic where Plaintiff had an appointment in April 2021. There is no mention of a walker or other assistive device in the contemporaneous progress note, whether as a prescribed device or otherwise.

Importantly, Plaintiff has not identified any medical documentation establishing the need for an assistive device or the circumstances for which it is needed. Sporadic findings of an antalgic gait, joint pain, back pain, and hip pain do not suffice, nor does the faxed form containing the orders for a walker, particularly since the form does not indicate that Plaintiff had mobility limitations that impaired her activities of daily living. The Court concludes that the ALJ did not err in his consideration of whether an assistive device was medically necessary.

## IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 17) be **GRANTED**;
2. The relief requested in Defendant's Brief (Dkt No. 19) be **DENIED**;
3. This matter be remanded to the Social Security Administration for further development of Plaintiff's mental and physical functioning from November 11, 2019 through April 5, 2022; and
4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 25, 2024                          *s/ John F. Docherty*
                                             JOHN F. DOCHERTY
                                             United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).